and not to a west-bound one going upon the siding, there could be no recovery.

The jury must have found that the rule was applicable to such west-bound train. I think this conclusion was wrong; that the rule was never intended to protect a train in the position of Dunn's from the rear end of another train, going upon the siding, when the trains were aware of the presence of each other. The telegraph operator was located a half mile from the east end of the siding. How could he tell when the rear of the train was clear of the main track? Dunn knew the other train was passing upon and along the siding. He exchanged signals with such train. Knowing the train was there, and that he could not safely pass the end of the siding until that train had entirely cleared the main track, he could tell much better than the operator when the main track was clear of that train. He had only to run along slowly, and keep his train under control, until he discovered the real condition of things there. The operator had no means of telling. These rules were not designed to protect trains, which were aware of each other's presence, against each other. I think this question as to the rules was one of law for the court; but, if one of fact for the jury, its determination thereof was erroneous as a matter of law, or was against the weight of the evidence.

I think, also, that Dunn was guilty of contributory negligence. There were lights on the rear of the west-bound train and upon the switch that would have indicated whether the tracks were clear or obstructed. If the night was so dark he could not see them, he should have held his train until he could see them, or learn what the condition of things there was. The west-bound train was running along just beside his, and he should have proceeded cautiously until he saw the rear end of it pass him, or knew it was clear of the main track. There is no justification for the claim that he might proceed blindly, relying upon the white light signal.

I do not think it necessary for us to consider or pass upon the question of assumed risk. Very likely that was a question for the jury, and its finding thereon should not be disturbed. All concur.

---

(66 Misc. Rep. 224 )

### VIBBARD v. KINSER CONST. CO.

(Supreme Court, Special Term, Saratoga County. February, 1910.)

DEPOSITIONS (§ 16*)—PERPETUATING TESTIMONY—RIGHT TO TAKE.

Under Code Civ. Proc. § 871, the wife of one who has sustained personal injuries may be granted an order for his examination, on showing that they were probably fatal, to the end that his testimony may be perpetuated for use in an action to be brought for damages thereafter to arise through his expected death; and, where an action is afterwards brought by the wife, a motion by defendant, who was represented at such examination, to vacate the order and suppress the deposition, will be denied, it not being necessary that the wife, at the time of her application, have a present cause of action.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. § 10; Dec. Dig. § 16.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Dora Vibbard, executrix, against the Kinser Construction Company. On motion to suppress deposition. Denied.

Edgar T. Brackett (James A. Leary, of counsel), for plaintiff.
Rockwood, McKnight & McKelvey, for defendant.

H. T. KELLOGG, J. This is a motion by the defendant to vacate an order directing the examination of one Harry R. Vibbard and to suppress the deposition taken pursuant thereto.

On August 1, 1908, Harry Vibbard was seriously, and, as the event proved, fatally, injured, while operating a crane for the defendant, by the overturning of such crane. On August 27, 1908, an action was brought by Harry Vibbard against this defendant for damages on account of such injuries. Thereafter, and while Harry Vibbard was still living, his wife, Dora Vibbard, presented an application to a judge of this court for the examination of Harry Vibbard concerning his injuries, in order that his testimony might be perpetuated for use in an action expected to be brought by her against this defendant for damages thereafter to arise through the expected death of her husband. It appeared from the affidavits presented on such application that the injuries to Harry Vibbard were probably fatal. All papers so presented were entitled "In the Matter of the Application of Dora Vibbard, Individually and as Executrix of Harry R. Vibbard, to Perpetuate the Testimony of Harry R. Vibbard." An order was thereupon granted, directing the appearance of Harry Vibbard before a referee for examination. This order and the papers upon which it was granted were served upon this defendant, a hearing before the referee at which this defendant was represented was thereafter had, and the examination of Harry Vibbard was taken as directed. Thereafter, on the 13th day of October, or about two weeks after such hearing, Harry Vibbard died.

Under the circumstances, the question of the suppression of the deposition becomes one of serious importance; for without such deposition this plaintiff, unless she might be able to secure the admission of her husband's testimony as a declaration made by him in extremis, would be prevented from presenting, on the trial hereof, evidence of the most vital character, without which her action would perhaps wholly fail. If the deposition of Harry Vibbard in his own action against this defendant had been taken, such deposition could not have been used on the trial of this action. Murphy v. New York Central & Hudson River Railroad Co., 31 Hun, 358. The court in that case was construing section 881 of the Code of Civil Procedure, and not section 830 thereof. Its attention was necessarily devoted to section 881, for that section deals with depositions taken in a former action, while section 830 deals with testimony given upon a former trial of an action or of an issue in a special proceeding.

The suggestion made by counsel that section 830 of the Code has been amended since the decision in the Murphy Case, and that, consequently, that decision is not applicable, is, therefore, not well taken. The decision in the Murphy Case is to-day a distinct and positive authority which would forbid the use in this action of a deposition taken in the action by Harry Vibbard. The reason for that decision ap-

pears to be that an executrix, suing for the death of her husband, is in no sense a party claiming through her husband, or in any way a successor of his in bringing her suit.

The deposition in question was sought to be taken under the authority of section 871 of the Code of Civil Procedure, which reads, in part:

"The deposition of a person not a party, whose testimony is material and necessary to a party to an action, * * * or to a person who expects to be a party to an action about to be brought in such a court, by a person other than the person to be examined, may also be taken as prescribed in this article."

It is urged, and with substantial reasons, that under this section no deposition could be taken, because Dora Vibbard, individually, could never bring an action for her husband's death, and as executrix she was not yet existent when the application was made. Therefore she was not, individually or otherwise, a person who expected to be a party to an action about to be brought. If the language of this section is to be construed strictly, the reasoning is obviously sound. On the other hand, if it be held that neither under this section nor under the common-law practice could the deposition be used, then in no case and by no means could the testimony of an injured person about to die be preserved for use in favor of his next of kin, though every objection to such testimony had been obviated by the fullest cross-examination conducted by the party to be sued. It does not appear to me that courts, by technical rules of evidence, intend the suppression of truth; for, if this deposition is excluded, that will appear to have been their sole aim.

The only objection at common law to depositions de bene esse was that they deprived a party of the right of cross-examination.

"The principle of the hearsay rule, as applied to the use of a deposition, is precisely the same as for testimony obtained in other tribunals, in the instances already reviewed. The mere speaking under oath is nothing. The essential condition is that the person against whom the sworn statement is offered should have had an opportunity to cross-examine the deponent. This is universally conceded as a common-law principle." Wigmore, § 1377.

"A deposition is considered a partial representation of facts as to all persons who have no opportunity of bringing out the whole truth by cross-examination." Berkeley-Peerage Case, 4 Comp. 412.

Wigmore further points out that the personality of the party presenting the deposition is immaterial, as there is no question of reciprocity, or res adjudicata, involved, but only the question whether upon the same subject-matter the party against whom it is now offered has already had adequate opportunity to sift its truth by cross-examination. Wigmore, § 1388.

Depositions de bene esse, taken in advance of the bringing of an action, were permitted at the common law without statutory authorization. Packard v. Hill, 7 Cow. 489.

"The necessity of this mode of taking testimony may as often occur before as after any pleadings in the cause." Mumford v. Church, 1 Johns. Cas. 150.

The sections of our Code applicable to the subject are, in many respects, only declaratory of the common law.

"A statute sometimes attempts to provide for the admission, under the present rule, of testimony at a former trial, as well as of ordinary depositions taken in the same or other proceedings, and of depositions taken in perpetuam memoriam. But it is worth noting that usually the effect of the common-law principle would be even broader than the statute's terms, and would suffice to admit, even where the case is not covered by the phraseology of the statute; i. e., the statute merely secures admissibility in certain instances, and is not intended to forbid admission in other instances." Wigmore, § 1388.

In Bradley v. Mirick, 91 N. Y. 293, testimony given at an earlier trial was admitted on a subsequent trial; the court stating that, both under the common law and the statutory rule, the evidence was admissible. This case appears to give recognition to the proposition that, in the matter of a deposition, taken as in this case, the common law may secure its admissibility, although it is not expressly sanctioned by statute.

As the sole test at common law was the adequacy of the opportunity previously afforded for cross-examination, I entertain no doubt that, independently of the Code section, this deposition would be receivable.

Nor do I think that the technical, narrow, and strict construction claimed for section 881 of the Code should be given to it. This plaintiff was not, at the time she made her application, a person who, in her then capacity of an individual, had any proper expectation of being a party to an action. She did, however, expect soon to become executrix, and in that capacity soon to bring suit. She was, therefore, in a sense, a person who expected to be a party to an action. It was not necessary that she should then have a present cause of action. Matter of Nolan, 70 Hun, 536, 24 N. Y. Supp. 238; People v. Crowley, 25 App. Div. 175, 49 N. Y. Supp. 214.

It was enough that she, with reason, anticipated being interested in an action at an early date, wherein the testimony of the person about to die would become essential. Any other view of section 881 would lead to the conclusion that the Legislature intended the exclusion of material evidence from an action, although every hearsay feature had been removed therefrom and no person could be unduly prejudiced thereby, solely and only from a motive to suppress the truth and to foster an injustice.

The motion to suppress is denied, with $10 costs.

Motion denied, with $10 costs.